## A. SUMNER v. SOUTHERN RAILROAD ASSOCIATION.

COMMON CARRIER. *Connecting lines.* A common carrier, who receives freight for transportation over his own route and the lines of other carriers, cannot bind such other carriers as to the rate to be charged for transportation, unless there is an agreement to that effect between them. And such other carriers will not be held to have impliedly assented to the rates charged by the first carrier, if, in receiving freight to be shipped over their routes under a bill of lading issued by the first carrier, they discover that the articles shipped are of a different character than those named in the bill of lading, and upon which the rates are higher. In such case they can transport the goods to their destination and charge and collect the increased rate.

### FROM HARDEMAN.

Appeal from the Circuit Court. THOS. J. FLIPPIN, Judge.

HILL & HARDEN for complainant.

VERTREES for defendant.

FREEMAN, J., delivered the opinion of the court.

Plaintiff shipped from St. Louis, by various steamboats, four lots of sewing machines, boxed up, put down in bill of lading, however, as hardware. The bill of lading specified that the shipment was to be sent to the wharf-boat at Memphis, "from thence by the Memphis and Charleston Railroad Company, or connecting roads, *subject to the conditions of their several charters and freight regulations,* and then be delivered at the company's depot at Bolivar, Tennessee, to A. Jordan, on presentation of this receipt, he or they paying the freight for the same at the rate of eighty-six cents per hundred pounds."

When the boxes arrived at Bolivar by the cars of the Southern Railroad Association, having been received from the Memphis and Charleston Railroad at Grand Junction, the agent of the defendant had bill of lading of the Memphis and Charleston Railroad for the freight as sewing machines, which, under the freight regulations of both railroads, were chargeable at higher rates than hardware, and were so charged in the bill of lading. The charge, however, was only the regular charge established by regulation for carrying such freight. The agent of defendant at Bolivar paid the charges on the bill of lading, which consisted of what was due the Memphis and Charleston company, and also what was paid the steamboat company by the

Memphis and Charleston company on receipt of the boxes by that company, retaining also the charge of his own company.

Jordan, the agent of Sumner, paid the sum thus charged, under protest, insisting that the railroads could only charge the rate specified by the steamboat company, and then brings their suit to recover the excess, amounting to about $33.

It is further shown that there was no privity or connection between the steamboat line and the railroad companies, nor any authority or agency on the part the steamboat company or line to make any contract for carrying freight for the companies.

It further very clearly appears that Sumner was perpetrating a fraud on the companies, and probably on the steamboats, by boxing the goods so as to conceal their character, and shipping them as hardware, at a lower rate of charges than if the shipment had been made as sewing machines.

On these facts, is the plaintiff entitled to his recovery against defendants, is the question.

The bill of lading is but the contract of the steamboat company, and can only bind it, under the facts of this case, but can have no effect to bind the railroads, unless they had assented to its terms expressly or impliedly, by receiving the freight and shipping it at the same rates.    By the contract with the steamboats, as contained in the bill of lading, they became the agents of Sumner to deliver the goods at the wharf-boat, and thence to the railroad company in the usual way.    But, on a fair construction of the lan-

guage of the contract, the companies had the right to charge their regular established freight on the shipment, for it is expressly stipulated that the railroads are to carry it "subject to their several charters and freight regulations." No doubt the steamboat agent, who made the contract, supposed the freight would be 86 cents per hundred pounds on the shipment as hardware; but when the true character of the article was accidentally discovered by the agent of the M. & C. Railroad at Memphis, he clearly had the right when he received the boxes to bill them truly, and charge the freight authorized by "the freight regulations" of his company, and the Southern Railroad Association, receiving the boxes as sewing machines, and transporting them as such, had also the right to charge for them in their true character, and, according to usage in such cases, pay the charges of the other company at their regular tariff for such articles. In a word, the error in the plaintiff's argument in the case, is in treating the contract of the steamboat company to charge 86 cents per 100 pounds as binding on the railroad companies, or in any way affecting their rights. In this view the plaintiff has only paid the steamboat what he contracted to pay, to-wit, 86 cents, and has had his goods transported by the railroad companies in accordance with their freight regulations—their regular tariff—and cannot complain, especially in view of the fraudulent effort to evade, by shipping sewing machines as hardware. That his fraudulent purpose has failed of success, can certainly not furnish a very substantial cause of action against

the defendant, nor one that appeals to a court of justice with any plausibility for its aid.

We have been referred by plaintiff's counsel to two cases from Massachusetts, which are supposed to hold a different view from what we have presented. We have examined them, but do not find them applicable to the question. The syllabus of the case of *Robinson* v. *Baker*, 5 Cushing's R., 137, is as follows: "A common carrier who accepts goods for transportation from one not entitled to control them, has no lien upon the goods for his freight as against the owner; and it will make no difference that the carrier acted in good faith and was not in fault."

This is quite a different case from the one before us, the steamboat line in this case having undertaken as agent of Sumner to ship by these roads, and therefore having the right to control the goods and deliver them to the company for transportation. While the case cited may be correctly decided on its facts, it is no authority against the view we have taken of the case before us. We doubt, however, its correctness in the entire proposition cited, as the carrier, it would seem at least, would be entitled to pay for the transportation on his own road what it was reasonably worth when the consignee took the benefit of his labor by receiving the goods from him at their point of destination.

The other case need not be noticed.

The case of *Schneider* v. *Evans*, 3 Am. R., 56, in its conclusions, sustains the view we have taken, and we think is sounder in its reasoning on this question

than the case above referred to, though some of the reasoning of the judge in the last case we do not approve.

On the whole, we are satisfied the judgment for the defendant below was correct, and affirm it.